**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Herbert Wesley Dabbs,<br><br>Debtor(s). | C/A No. 19-04575-JW<br><br>Chapter 13<br><br>**ORDER OVERRULING OBJECTION TO CLAIM** |

This matter comes before the Court upon Herbert Wesley Dabbs' ("Debtor") Objection ("Objection") to the Proof of Claim of Wells Fargo Bank, NA ("Wells Fargo") filed on December 9, 2020. No response was filed to the Objection. The Court held a hearing on the Objection, attended by Debtor's counsel.

Wells Fargo filed a proof of claim on October 29, 2019 ("Proof of Claim") stating that it holds a secured claim in the amount of $14,797.51 relating to Debtor's purchase of siding placed on Debtor's primary residence ("Siding").[1] The Proof of Claim indicates that Wells Fargo's secured claim was perfected based upon a "Sales Contract." Attached to the Proof of Claim is a document entitled "Wells Fargo Home Projects Credit Card Account Application" ("Purchase Agreement") signed by Debtor, which includes the following provision: "You[, Debtor,] give us[, Wells Fargo,] and we will retain a purchase-money security interest in goods purchased under our Credit Card Agreement." Attached to the Purchase Agreement is the invoice from Southern Siding and Windows reflecting the terms of the loan, a description of the Siding and its use in the location of Debtor's residence.

Debtor's Objection asserts that the Proof of Claim should be allowed only as an unsecured claim, alleging that the "loan was intended to be unsecured" and that Wells Fargo "has not provided evidence of a properly, [sic] perfected security interest." Debtor raised but offered no

---

[1] Wells Fargo's Proof of Claim has a total claim amount of $15,150.44.

evidence to support two arguments at hearing: (1) the Purchase Agreement was insufficient to create a security interest in the Siding; and (2) a security interest in the Siding was not properly perfected.

**1. Was the Purchase Agreement Sufficient to Create a Security Interest?**

Security interests in the goods at issue, the Siding, are controlled by Article 9 of the South Carolina Commercial Code. To have an enforceable security interest, § 36-9-203(b) of the South Carolina Code provides that:

> [A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>> (1) value has been given;
>>
>> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>>
>> (3) one of the following conditions is met:
>>> (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . .

S.C. Code Ann. § 36-9-203(b) (2021).[2] Debtor does not dispute that the first two criteria under § 36-9-203(b) are satisfied as it is clear that Wells Fargo gave value in this transaction by providing the funds for Debtor to purchase the Siding and that Debtor has rights in the Siding as its owner and possessor.

Debtor first asserts that the Purchase Agreement was not a sufficient "security agreement." Section 36-9-102(a)(74) of the South Carolina Code defines a "security agreement" as "an agreement that creates or provides a security interest." A review of the Purchase Agreement shows that it satisfies the requirements of §§ 36-9-203(b) and 36-9-102(a)(74). The Purchase Agreement contains clear language that Debtor is giving a security interest to Wells Fargo in the purchased

---

[2] The Court notes that § 36-9-203 includes several exceptions and options for the creation of security interests, which the Court has not listed in this Order as they are not applicable to the present matter.

goods, which are adequately described in the invoice attached to the Purchase Agreement, both of which were properly authenticated when Debtor signed the documents.[3] For these reasons, the Court finds the parties intended to create a security interest in the Siding under the South Carolina Commercial Code through the Purchase Agreement.

**2. Was the Security Interest Properly Perfected?**

Debtor also argues that Wells Fargo's Proof of Claim should not be treated as secured, alleging that it is not properly perfected. The Court first notes that an unperfected security instrument is still enforceable between the parties to the agreement, in this instance Wells Fargo and Debtor. The consequence of a security instrument being unperfected is that it lacks priority over other security instruments covering the same collateral that are properly perfected, not the nullification of the security instrument.

Further, it appears Wells Fargo holds a perfected security interest in the Siding. The South Carolina Commercial Code provides for automatic perfection of purchase money security interests in consumer goods. Specifically, S.C. Code Ann. § 36-9-309(1) provides that security interests in "a purchase-money security interest in consumer goods" are perfected when they attach. As the Official Comment to this section states, "[n]o filing or other step is required to perfect a purchase-money security interest in consumer goods . . . ." S.C. Code Ann. § 36-9-309, Off. Cmt. (2021).

The South Carolina Commercial Code defines "consumer goods" as "goods that are used or bought for use primarily for personal, family, or household purposes" *See id.* at § 36-9-102(a)(23). In the present matter, the Siding for Debtor's residence was clearly bought and used

---

[3] Bills of sale have commonly granted security interest in purchased goods as indicated by the Official Committee Notes under S.C. Code Ann. § 36-9-203: "Neither that definition [of "security agreement" under § 36-9-102(a)(74)] nor the requirement of paragraph (3)(A) [of § 36-9-203] rejects the deeply rooted doctrine that a bill of sale, although absolute in form, may be shown in fact to have been given as security."

3

for his personal, household purposes and would qualify as a "consumer good" under the Commercial Code.

Section 36-9-103(b)(1) of the South Carolina Code provides that "[a] security interest in goods is a purchase money security interest to the extent that the goods are purchase-money collateral with respect to that security interest." "Purchase-money collateral" is defined as "goods or software that secures a purchase-money obligation incurred with respect to that collateral."[4] *Id.* at § 36-9-103(a)(1). In the present matter, Wells Fargo provided the funds to Debtor to enable Debtor to pay the purchase price of the Siding, the collateral under the terms of the loan agreement. As such, Wells Fargo's claim is a purchase money security interest in consumer goods, which would be automatically perfected upon the entry of the security agreement.

While the Siding may have become a fixture on Debtor's real property, Wells Fargo's perfected security interest in consumer goods was not lost when the Siding became a fixture. Nowhere in the South Carolina Commercial Code does it provide that the security interest is lost when collateral becomes a fixture, nor has Debtor cited to any authority that would provide otherwise. In fact, the South Carolina Commercial Code permits continued perfection even as to certain competing creditors. *See* S.C. Code Ann. § 36-9-334(e)(3) ("A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if . . . the conflicting interest is a lien on real property obtained by legal or equitable proceedings after the security interest perfected by any method permitted by this chapter [of the Commercial Code.]"); 9B Frderick H. Miller and Carl S. Bjerre, HAWKLAND UCC SERIES § 9-309-2 [Rev] (Dec. 2020) (hereafter "HAWKLAND") (noting that a creditor with a purchase money security

---

[4] This section of the Commercial Code also defines "purchase-money obligation" as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." *Id.* at § 36-9-103(a)(2).

interest in a consumer good that becomes a fixture may rely on the exception under § 9-334(e)(3) of the UCC to remain perfected without a fixture filing as to all creditors except for creditors whose interest arise from mortgages). Therefore, Wells Fargo's security interest remains perfected as a consumer good even after becoming a fixture on Debtor's residence.

## CONCLUSION

As Wells Fargo holds a security interest in Debtor's Siding which has not otherwise been avoided,[5] Wells Fargo holds a secured claim. Therefore, Debtor's Objection to Claim seeking to disallow the secured portion of Wells Fargo's claim is overruled, and the claim is allowed as filed.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
February 2, 2021

**FILED BY THE COURT**
**02/02/2021**



Entered: 02/02/2021

_John E Waites_
US Bankruptcy Judge
District of South Carolina

---

[5] In a case with similar facts as the present matter, Judge Whitley of the U.S. Bankruptcy Court in the Western District of North Carolina, in applying similar statutes under the North Carolina Uniform Commercial Code, noted that a bankruptcy trustee cannot, under 11 U.S.C. § 544(a)(1) (Trustee's status as a hypothetical judgment lien creditor) or (3) (Trustee's status as a hypothetical bona fide purchaser for value), avoid a purchase money security interest in a consumer good that becomes a fixture on the debtor's real estate. *See In re Story*, 2016 WL 5210572, slip op. at *2–3 (Bankr. W.D.N.C. Sept. 21, 2016).